```
United States District Court
Southern District of New York
```
------------------------------------------------

**PATRICIA SEYLER,**

                       **Plaintiff,**         **10 Misc. 7 (JGK)**

      - against -              <u>**OPINION AND ORDER**</u>

**T-SYSTEMS NORTH AMERICA, INC., ET AL.,**

                       **Defendants.**

------------------------------------------------

**JOHN G. KOELTL, District Judge:**

    The defendants, T-Systems North America, Inc. ("T-Systems") and Gregg Mihallik, move to compel responses to a subpoena issued pursuant to Federal Rule of Civil Procedure 45. The subpoena sought all correspondence between the plaintiff, Patricia Seyler, and her sister, Julie Seyler. The plaintiff argues that the correspondence is covered by the attorney-client privilege, because her sister is an attorney and the correspondence concerned the seeking and provision of legal advice. The defendants argue that the correspondence was outside the scope of the privilege; alternatively, they argue that the plaintiff waived any privilege.

I.

    On December 14, 2009, the plaintiff filed suit against T-Systems, her former employer, and Mihallik, her former manager,

1

in the Superior Court of New Jersey, alleging state-law claims of a hostile work environment, retaliation, and intentional infliction of emotional distress. (Certification of Michael M. DiCicco Ex. A.) The defendants removed the case to the District Court for the District of New Jersey. See Notice of Removal, Seyler v. T-Systems N. Am., No. 10 Civ. 1683 (D.N.J. Mar. 31, 2010).

During the course of discovery in the District Court, the plaintiff turned over an email exchange between her and her sister, who is a lawyer with a New York law firm. (Decl. of Michael R. Turco Ex. D, E.) The defendants subsequently issued a subpoena to the law firm for "all documents or electronically stored information sent to, received from, or exchanged amongst Patricia Seyler and Julie B. Seyler" regarding ten different topics related to the lawsuit. (Id. Ex. E.) After the law firm objected to producing the documents on the ground that the documents were protected by the attorney-client privilege, the defendants filed a motion in this Court to compel responses to the subpoena.

## II.

Motions to compel a subpoena are "entrusted to the sound discretion of the district court." In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (internal citation omitted). Under the

Federal Rules of Civil Procedure, a party is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).

The parties agree that New York law controls the application of attorney-client privilege in this case.  See Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) ("[T]he parties' briefs assume that New York law controls this issue, and such implied consent . . . is sufficient to establish choice of law." (omission in original) (internal quotation marks omitted)).[1]  Although New York has codified attorney-client privilege, it continues to look to the common law for guiding principles.  See Spectrum Sys. Int'l Corp. v. Chem. Bank, 581 N.E.2d 1055, 1060 (N.Y. 1991); see also N.Y.C.P.L.R. § 4503(1).  To be privileged, a communication must be made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship," and must be "primarily or predominantly of a legal character."  Spectrum Sys., 581 N.E.2d at 1060 (internal quotation marks omitted).

---

[1] In the absence of the parties' agreement, there might be some doubt as to the applicable state law, given that the "rule of decision" for the plaintiff's merits claims is supplied by New Jersey state law, rather than New York law.  See Fed. R. Evid. 501; see generally 23 C. Wright & K. Graham, Federal Practice & Procedure § 5435 (1st ed. 1980) (discussing the choice of law problem that arises in privilege determinations where the rule of decision is provided by a different state than the state in which the court hearing the claim of privilege sits).  In any event, "the attorney-client privilege in New York does not differ in any material way from that in New Jersey . . . for purposes of the instant motion."  In re Human Tissue Prod. Liab. Litig., 255 F.R.D. 151, 156 (D.N.J. 2008), aff'd, Civ. No. 06-135, 2009 WL 1097671 (D.N.J. Apr. 23, 2009).

Whether an attorney-client relationship was created "does not depend on the existence of a formal retainer agreement or upon payment of a fee"; rather, "a court must look to the words and actions of the parties to ascertain the existence of such a relationship." Moran v. Hurst, 822 N.Y.S.2d 564, 566 (App. Div. 2006). The party claiming the privilege bears the burden of establishing it. Spectrum Sys., 581 N.E.2d at 1059.

The subpoena is addressed to the law firm where the plaintiff's sister practices law and broadly seeks all documents received from, sent to, or exchanged among the plaintiff and her sister relating to ten different topics having some relation to the pending lawsuit in New Jersey. This correspondence occurred while the plaintiff was pursuing a claim of a sexually hostile work environment that she had filed with her employer, a claim that ultimately led to this lawsuit. The privilege log filed by the law firm in response to the subpoena reveals that no fewer than five attorneys sent or received email as part of this correspondence. (Certification of Michael M. DiCicco Ex. C.) The sole email that has been submitted to the Court and which was produced in the course of discovery clearly contains "legal advice," in that it concerns the proper response to a memorandum regarding the claim and advises the plaintiff on specific points that she should seek to make. (Id. Ex. B.)

4

The defendants argue that the disclosed email, and by extension the entire correspondence with the plaintiff's sister's law firm, was "personal in nature," and that the plaintiff "simply called her sister for familial advice." (Def.'s Br. 11.)  In addition to the content of the email and the fact of the familial relationship, they point to the fact that the plaintiff's sister's area of expertise was patent law, and to the plaintiff's deposition testimony that she was not "working with a lawyer" and had not "retained a lawyer" at the time of the internal claim.  (Decl. of Michael R. Turco Ex. A at 140.)

These contentions are unavailing.  The email from the plaintiff's sister contained precisely the sort of advice a lawyer might give in advising a client who is drafting correspondence for a later litigation record.  The fact that the plaintiff's sister was a family member and a patent lawyer is not controlling, particularly given the fact that other lawyers from her firm, who may have had more relevant expertise, were brought into the discussion.  Moreover, the Court credits the plaintiff's sworn certification that she understood the deposition questions to ask whether she "had hired and agreed to pay for an attorney," rather than whether she had sought any legal advice at all.  (Certification of Patricia Seyler ¶ 3.)

The plaintiff has satisfied her burden of showing that a "professional relationship" existed and that the communications sought by the defendants were for the "purpose of facilitating the rendition of legal advice or services," and were "primarily or predominantly of a legal character."  Spectrum Sys., 581 N.E.2d at 1060.  Accordingly, the documents sought by the subpoena are covered by the attorney-client privilege.[2]

### III.

The defendants next argue that the plaintiff waived any claim of privilege by producing the email between her and her sister during discovery while the case proceeded in the District Court for the District of New Jersey.  Unlike the scope of the privilege, the waiver question is governed by Federal Rule of Evidence 502(a), which applies when a "disclosure is made in a Federal proceeding."  Under Rule 502(a), attorney-client privilege is only waived as to undisclosed communications if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  Fed. R. Evid. 502(a).

---

[2] The defendants' motion does not argue that individual documents are not covered by the privilege even if the privilege applies generally, and therefore the Court has no reason to consider this question.

The Advisory Committee Note makes clear the narrow scope of this intentional waiver provision:

> [A] subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. . . . [S]ubject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.

Id. 502(a) Advisory Committee Note; see also Eden Isle Marina, Inc. v. United States, 89 Fed. Cl. 480, 503 (2009) ("By requiring the waiver to be intentional, Congress made it clear that a subject-matter waiver cannot result from an inadvertent disclosure.  And, by requiring a fairness analysis, Congress recognized that '[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures.'" (quoting Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005))).

There is no evidence pointing to the conclusion that the plaintiff intentionally waived her attorney-client privilege in

disclosing the single email produced during discovery or in discussing that email during her deposition.  The Court credits plaintiff's counsel's sworn statement that he did not at the time know that the plaintiff's sister was a lawyer.  (Certification of Michael M. DiCicco ¶ 4.)  Although this evidence might be sufficient to establish that the disclosure of the email was not "inadvertent" for the purposes of Rule 502(b), and that the plaintiff has therefore waived her privilege as to that single email (a question not before the Court), it does not satisfy the higher standard of intentional waiver in Rule 502(a).  Moreover, the plaintiff's counsel made it clear at argument that the plaintiff will not use this email.  Thus, this is not a case where a party intends to use the privileged communication and undisclosed attorney client communications ought in fairness to be considered together.  <u>See</u> <u>Eden Marina</u>, 89 Fed. Cl. at 521 ("Because defendant's disclosures lacked any strategic value and have not adversely impacted plaintiff's ability to prosecute its case, the court declines to extend the scope of the waiver . . . .").  Therefore, the plaintiff has not waived her privilege as to heretofore undisclosed communications.

## CONCLUSION

For the foregoing reasons, the motion to compel the plaintiff's response to the defendants' subpoena is **denied**. The Clerk is directed to close Docket No. 1 and to close the case.

**SO ORDERED.**

Dated:  New York, New York
        January 20, 2011

                                    _____
                                         John G. Koeltl
                                    United States District Judge